## MASON *vs.* JONES.

*In the matter of the estate of* JOHN MASON, *deceased.*

ON allegations filed within a year after probate, the Surrogate confirmed the probate. An appeal was taken to the Circuit Judge, and he affirmed the Surrogate's decision, and an appeal was taken to the Chancellor, which, under the new constitution, was heard and determined by the Supreme Court. The decisions of the Surrogate and the Circuit Judge were reversed upon questions of fact, and the Supreme Court directed a feigned issue, to try the validity of the will. *Held,* that until a final decision, the case remains with the appellate court; and that the decree reversing the orders of the Surrogate and the Circuit Judge, and awarding a feigned issue, was not a final decision.

The Supreme Court having authority to reverse or affirm the judgment, or to retain the case for the purpose of making such further order as might be just, or remit it to the inferior tribunal for that purpose; and having in the present instance, after reversing the orders appealed from, directed a feigned issue, no order can be made by the Surrogate until a final decision of the case, upon the merits, by the appellate tribunal.

GEORGE WOOD *and* J. J. RING, *for Petitioner.*
D. LORD *and* M. J. BIDWELL, *for Executors.*

JUNE, 1851.

INGRAHAM (*First Judge of the Common Pleas, acting as Surrogate.*) This petition is presented to the First Judge of the Common Pleas, acting as Surrogate, in consequence of the relationship of the Surrogate to one of the parties in interest, and asks for a revocation of the letters of probate, heretofore granted by the Surrogate on the will of John Mason, deceased. On the 20th June, 1842, the probate of the will before-granted was confirmed by the Surrogate. An appeal was taken from the Surrogate to the Circuit Judge, by whom the decision was also affirmed. The parties again appealed to the Chancellor, which appeal was heard, pursuant to law, before the general term of the

Supreme Court, and on that appeal the order of the Surrogate, admitting the will to probate, and of the Circuit Judge affirming such order, were each of them reversed upon questions of fact. Had the order or decision of the Supreme Court ended with reversal, there would be no doubt of the propriety of granting this application to revoke the letters of probate, and to appoint an administrator of the estate. But the Supreme Court, at the same time, further ordered, that, inasmuch as such reversal was founded upon a question of fact, a feigned issue be made up between the parties, to try the question arising upon the application to prove said will. It is apparent from this order, that the Supreme Court did not intend to dispose finally of the case, inasmuch as by the order they evidently intended to exercise the power which, by statute, is conferred upon the Circuit Judge, for the purpose of trying before a jury the validity of the will, and, if sustained, of sending it back to the Surrogate for probate again. It is contended on the part of the petitioner, that the portion of the order made by the Supreme Court, directing a feigned issue, is erroneous and void, and, therefore, that the whole decision of the Court is a mere reversal of the judgment appealed from. The propriety of asking an inferior tribunal to decide upon the validity or regularity of proceedings in the appellate court, to whose decisions obedience is to be yielded, may well be doubted. My acts in this matter are now subject to review by the Supreme Court; and I should hesitate very much before I would undertake to decide that the decision of that Court in this matter is erroneous. Nor is it clear that the view taken by the petitioner's counsel, of this order, is correct. Although the Chancellor may not have had the power to order a feigned issue to be made, still it is to be remembered that the Supreme Court is now vested with all the powers of Circuit Judges, as well as of the Court of Chancery; and when the decision of reversal, if enforced without the accompanying order for a feigned issue, would be conclusive as to the validity of the will so far as relates

to the personal property, the power, if it does exist, of making such an order, should clearly be exercised. It is also said that this order is one which could not be appealed from, and the case of *Reid* vs. *Vanderheyden*, 5. *Cowen*, 719, is cited as authority to that effect; but that case shows that this portion of the order, now objected to, may be appealed from; because there, the Court of Errors reversed just such an order for a feigned issue, made by the Court of Chancery for the same purpose. From the views above expressed, it will be seen that it is unnecessary for me, at the present time, to pass upon the merits of this motion. Until, by an application to the Supreme Court to modify the order made by them, or a reversal of it by the Court of Appeals, or the disposition of the question on a feigned issue, some final decision is made, it would be premature in the Surrogate, or the First Judge acting in his place, to make any order interfering with the action of the Supreme Court in this matter. Reserving, therefore, any expression of opinion upon the merits involved in this application, until the Supreme Court shall make a final disposition of the case, I deny the application, for the cause above stated.

* * *

## In the same Matter.

JULY, 1852.

The petition in this matter was originally presented to me last year, praying for the appointment of an administrator on the estate of John Mason, deceased, and a revocation of the letters testamentary, issued upon the supposed will of Mr. Mason. This application was made to me, in consequence of a decision of the Supreme Court, declaring that the paper writing purporting to be the will was not sufficiently proved, and directing the decision of the Surrogate to that effect, and the decision of the Circuit Judge affirming the decision of the Surrogate, to be each of them reversed. The order proceeded to award a feigned issue,

to try the validity of the will.   It was contended on behalf
of the petitioner, that the latter part of the order, directing
a feigned issue, was void, because the Court had no power
to make such an order, after reversing the judgment; and
therefore, that the decree of reversal was conclusive be-
tween the parties.   In deference to the Supreme Court, I
refused to express any opinion on the merits, upon the
ground that an application should be first made to the Su-
preme Court, to correct any such error in the form of giving
their judgment (if it existed), before an inferior tribunal
was required to review the propriety of such decision.
This application has since been made, and the Supreme
Court, in answer to it, have decided that the order was
properly entered, and as it was not appealed from, was
binding on the parties, and could not be reconsidered or
altered.   The petitioner has again renewed his application,
and it becomes necessary for me now to decide upon the
merits of the application.   The application to admit the
will to probate was originally made in 1839, and the deci-
sion of the Surrogate thereon was confirmed by him in
June, 1842 ; from which decision an appeal was taken to
the Circuit Judge, who affirmed the decision of the Surro-
gate, whereupon an appeal was taken to the Chancellor.
By the change in the organization of the Courts, the duty
of deciding on the appeal devolved on the Supreme Court,
when the decision was made by them reversing the former
decisions of the Surrogate and Circuit Judge, and directing
that a feigned issue should be made up to try the validity
of the will.   That such an order could have been made by
the Circuit Judge is not only conceded, but it must be ad-
mitted that such an order was required from him in all
cases in which he decided to reverse the Surrogate's deci-
sion upon a question of fact.   (2 *R. S., p.* 609, § 98, *and* 2
*R. S., p.* 66, § 57.)   Upon an appeal to the Chancellor, he
was required to hear the same in the manner other appeals
from the Surrogate were heard.   (2 *R. S.,* 610, § 103.)   In
all other appeals from the decisions of Surrogates, they

have been generally heard and decided without the aid of a jury. It does not, however, follow that the Chancellor could not have ordered a feigned issue in any case of that nature before him; on the contrary, the effect of such an appeal being to carry up the whole case from the Surrogate's Court, the Court of Chancery had full power to resort to any mode within the powers of the Court for the purpose of ascertaining the facts necessary to a decision thereof. So far, therefore, as the Court of Chancery had control of this case on the appeal, there can be no doubt that until that Court had finally disposed of the case on its merits, the power of that Court over the whole matter continued; and when so decided, the Court still had power to render the proper judgment, or remit the proceeding to the Court below for that purpose. As the Supreme Court now holds the jurisdiction over this matter in the same manner as the Chancellor, that Court, of course, possesses the same powers over it. The Supreme Court also possesses the power the Circuit Judge had on these appeals, and the powers heretofore vested in the Circuit Judge and the Court of Chancery are now all united in the one court. It is proper, however, to remark, that the powers of the Court, while acting on an appeal originally taken to the Chancellor, are not to be confounded with the powers which that Court might exercise if the appeal was directly from the Surrogate, and that the union of these powers in the Supreme Court is not material to the decision of this question, except so far as the same might be involved in the execution of the order directing the feigned issue, and rendering an order remitting the cause to any other tribunal for the trial of such issue unnecessary. When the appeal is to the Circuit Judge, his powers are strictly defined by the statute; he can only affirm or reverse the decision of the Surrogate. He has no power to make any other judgment, or in any way to modify the decree of the Surrogate. But it is not so when the appeal is from him to the higher courts. Nothing in the statute limits their right of controlling the case, or of giving such

final judgment therein as those courts think proper. The statute does not direct any form of decision, but leaves to these courts all the powers which, as appellate courts, they possess in other actions. On appeals, therefore, of this nature, the Chancellor became vested with jurisdiction over the entire case, and had authority to proceed with the same, and make such a final order or decree as to him should seem proper. And such power is now lodged in the Supreme Court. It would only be after a final decree in the case, upon the merits, that the Surrogate could be called upon to act either in favor of or against the will. Until such final decision is made, the case still remains with the appellate court. The order of the Supreme Court reversing the decision of the Surrogate and Circuit Judge is not, in my judgment, such a decision. It does not decide that the will is invalid, but reverses the decisions below, and gives as the reason that the will has not been sufficiently proved. If the judgment of that court had not only reversed the decision of the Surrogate and Circuit Judge, but had also declared that the paper writing was not the will of the deceased, the case would have been entirely different. After such a judgment there would have been no propriety in ordering a trial by a jury, because the first decision upon the merits would render such a trial useless. There is also some room to doubt whether the order, as made by the Supreme Court, can in any event be considered as beyond the power of the Court. It is a settled principle that appellate courts, unless limited by statutory provisions, have the power to give the judgment which the inferior tribunal should have rendered. (11 *J. R.*, 141; 4 *Wend.*, 95; 5 *Hill*, 507.) Thus we have appellate courts reversing judgments merely, leaving the parties to commence a new action; or, in addition to reversal, ordering judgment for the appellant, thus ending the case; or reversing a judgment of the inferior courts, and retaining the case in the appellate court for subsequent trial or hearing; or giving the judgment for the appellant, and sending the case back to the inferior tri-

bunal for a new trial or hearing. There is nothing in the statute which would prohibit the Chancellor, when the appeal was to that Court, from a final disposition of the case upon the merits. He was required to proceed on the appeal as in other appeals from Surrogates, but he was not limited to a mere reversal of the decree below. See *Haydock* vs. *Allen*, *Hop.*, 352, where the Chancellor reversed the decision of the Surrogate, and retained the case for further hearing.

This decision, as I have heretofore intimated, was the order which, in the opinion of the Supreme Court, the Circuit Judge should have made ; and they have made the same order that he should have made. In addition to this, the effect of their order is to send it back to be heard and disposed of at a Circuit Court, in the same manner as if the appeal was pending before the Circuit Judge. In the case of *Lispenard's Will*, 26 *Wend.*, 255, in which the Court for the Correction of Errors reversed the decision of all the courts, Judge Bronson proposed precisely such an order as was made here, viz. merely reversing the decisions below, and ordering a feigned issue in the court below. In that case, although the point was argued by the counsel, yet no one of the judges doubted as to the power of the Court to make such an order ; and Justice Bronson expressly stated that that Court had power to give the same judgment as ought to have been given by the court below. (*p.*, 322.) My conclusion is, that the appellate court has authority to affirm or reverse the judgment appealed from merely, and leave the parties to commence anew in the court below ; or, if that court so determine, may retain the case for the purpose of making such further order and decree as to that court may seem proper, or may remit it to the inferior tribunal for that purpose. In the present case, the Supreme Court, having reversed the decree appealed from, directed the issue to be tried, and either, as the appellate court, may retain the cause for a further decree therein, or may treat it as if remitted to the Circuit Judge for the trial

of the issue. As all the powers of that officer are now vested in the Supreme Court, either course might be within the powers of that Court; and until a final decision upon the merits shall have been made by that Court, no order can, with propriety, be made by the Surrogate, as asked for by the petitioner. What may be the result of such action on the part of the Supreme Court, it is not for me now to decide. Whether the Surrogate would be bound, upon the finding of the jury being certified to him, to follow the provisions of the statute which regulate such proceedings when pending before the Circuit Judge, or whether the Supreme Court, after the trial of such issue, should make a final judgment or decree in the matter, must be left for future determination. The questions under consideration are by no means free from difficulty; but my conclusion is that my duty is best discharged by a denial of this application.